## ANDERSON *v.* WELLS.

PATENTS; INTERFERENCE; PRIORITY; DISCLOSURE; DILIGENCE.

1. When a party claims an invention, and also to have communicated the invention to another, who has applied mechanical work thereto, and put such invention into practice, claiming the same as his own, the com-

munication, in order to be effectual, must be shown to have been full and clear as to all the essential elements of the invention, and such as was sufficient in itself to enable the party to whom the disclosure was made to give the invention practical form and effect without the exercise of invention on his part. (Following *Sendelbach* v. *Gillette*, 22 App. D. C. 174.)

2. A junior applicant in interference, if he would prevail upon the ground that he disclosed the invention to his rival, who has received a patent, must prove such disclosure beyond a reasonable doubt.

3. An inventor who was the first to conceive, but who, without adequate reason, delayed for a year to reduce to practice, and to file his application, which was not filed until six months after the issue of a patent to his rival, cannot be said to have exercised due diligence, and will not be awarded priority.

No. 327.    Patent Appeals.    Submitted January 10, 1906.    Decided March 6, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Marcellus Bailey* for the appellant.

*Mr. Robert P. Haines* and *Mr. John C. Dewey* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents. The parties to the interference are Joel C. Wells, appellee, who filed his application March 27, 1903, and to whom a patent was granted May 26, 1903, and James C. Anderson, appellant, who filed his application December 14, 1903.

The interference embraces four counts:

"1. In rimless spectacles, means for attaching the temple at the outer edge of the lens, comprising a strap or loop, extending over the edge of the lens, and secured thereto by a screw, and a knob or projection on the inner side of said strap said knob hav-

ing a slot therein to receive the end of the temple, and a stud or screw to pivotally secure the temple thereto, substantially as shown and described.

"2. In rimless spectacles, the combination with the lens, of means for attaching the temple thereto, said means comprising a strap extending over the outer edge of the lens, and secured thereto, and a knob or projection on the inner side of said strap, the outer edge of said knob or projection being substantially in line with the outer edge of the strap, and said knob having a slot or recess therein to receive the end of the temple, and a stud or screw to pivotally secure the temple thereto, substantially as shown and described.

"3. In rimless spectacles, the combination with the lens, of means for attaching the temple thereto, said means comprising a strap or loop extending over the outer edge of the lens, and secured thereto, and a knob or projection on the inner side of said strap, and at the outer edge thereof, and substantially in line with the outer edge of the strap, and within the outer edge of the lens, said knob having a slot or recess therein, to receive the end of the temple, and a stud or screw to pivotally secure the temple thereto, substantially as shown and described.

"4. In rimless spectacles, the combination with the lens, of means for attaching the temple thereto, said means comprising a strap or loop, extending over the outer edge of the lens, and beyond the edge of the lens the thickness of the strap only, and secured to the lens, and a knob or projection upon the inner side of the strap, and at the outer edge of the strap, and substantially in line with the outer edge of the lens, said knob or projection having a slot or recess therein to receive the end of the temple, and a stud or screw to pivotally secure the temple thereto, substantially as shown and described."

The matters involved in these counts are well stated by the Examiner of Interferences, who, after saying that it is an old device in rimless spectacles to have the projection, to which are secured the temple bows, extending inwardly at right angles to the securing strap or loop, as shown in the patents to one Thomas and to one Fox; that in none of these patents does the projection

stand in line with the outer edge of the strap and within the outer edge of the lens; that in Mansfield's patent the temple support is shown to be within the outer edge of the lens; proceeds as follows: "The invention at issue involves an improvement in that construction of rimless spectacles which have a strap or loop extending over the outer end of the lens and secured thereto by a screw. The novel feature consists in locating the knob or projection to which the temple bows are pivotally secured on the inner side of the strap, with its outer edge substantially on a line with the outer edge of said strap. To place the knob or projection of the patents to Thomas or Fox slightly inward so as to be flush with the lens would produce the invention in controversy. It is evident, therefore, that the invention is of an exceedingly limited character."

The Examiner of Interferences awarded priority of invention to Wells. On appeal, the Examiners-in-Chief reversed the decision of the Examiner of Interferences and awarded priority to Anderson. On appeal, the Commissioner of Patents reversed this decision and awarded priority of invention to Wells. From the Commissioner's decision, Anderson appealed to this court.

The appellant alleges that he conceived and disclosed the invention about July 1st, 1902, and made a model showing the invention, and subsequently engaged the services of a manufacturer and had several samples made, endeavoring to attain great accuracy, and gave orders to the manufacturer of his invention in quantities, and, being apprised of the granting of a patent for his invention to Wells, thereupon countermanded his order for the manufacture of the goods to await the determination of his right to the priority of invention. Anderson is an inventor to whom has been granted probably a hundred patents. He says his habit is to thoroughly demonstrate and practically complete his numerous inventions before applying for a patent.

Anderson had trouble with his glasses, and went to an optician in Baltimore to procure a satisfactory pair, and, failing to get them, about July 1st, 1902, conceived the idea of making glasses in accordance with the issue. He intended to construct short

bows or "temples" in lieu of the long bows, and adapt them conveniently for use on his own head. He sought to dispense with the lugs or projections extending outward in a line with the lenses, and he attempted to change some of the rimless spectacles with long ear bows, which he had purchased from the Baltimore optician, into the form he desired. He sought to have "the longitudinal projections removed and the lugs and hinge of the bows placed immediately behind the lugs which attach the bows to the lenses;" and, said he, "I called in my superintendent of the machinery department to make the necessary changes, explaining to him at the time fully my purposes and what I desired him to do." Anderson asked him "if he could not cut off these lugs and solder then in the position desired leading directly back from the ends of the lenses." The brittle glass, and the hard metal bows, and the lack of special facilities foiled his efforts. He called in H. C. Moberly, another employee, and Anderson adds: "Explaining to him fully at the time my purpose, not only of having the lugs brought back to a position in line with the end of the lens and leading backward, but my desire to lessen the obstruction to view by reason of this unnecessary chunk, as I termed it, extending to the line of vision."

Anderson testified that for some years he had an experimental shop at the works of the Murrill & Keizer Company of Baltimore; that his superintendent referred to was James Anderson, a mechanical engineer and draftsman, not related to the appellant, and that Harry C. Moberly was a machinist employed at the works of the Murrill & Keizer Company.

Anderson successively instructed these witnesses in the first instance to cut off the lug. That attempt was a failure. The superintendent Anderson says the idea was to cut it off, "the hinge part to be soldered to the back of the lug to come flush with the outer edge of the strap." But the witness found, if that were done, sufficient stock would not be left to hold the hinge together, and then the appellant, Anderson, asked the witness "if we could not bend it over sufficient to show his idea, what he was driving at," and, when shown an exhibit containing all the elements of the issue, and being asked how a pair of

spectacles such as Anderson wanted made in June, 1902, would compare in construction with the exhibit, the witness said: "It would be the same as this sample in all respects." The superintendent fixes the time of these efforts about the middle of June, 1902. Harry C. Moberly, before mentioned, said that between the latter part of May and the middle of June, he worked on a pair of rimless glasses under instructions from Anderson, who asked him to bend the lug of a pair of rimless glasses with long bows, which were given him, "around in front of the glasses on a line with the outer edge." The witness tried to do this, and he broke one of the lugs, and next broke a pair of round-nosed pliers which were exhibited. Moberly said: "Anderson wanted this lug here extending out; he wanted to bring it behind in line with the outer edge of the glasses;" and he identified the lug which he had broken, and which he had first "started to cut off and then in bending broke off." The testimony of Moberly identifies the invention of the issue in this interference, and proves in Anderson's behalf a conception of the invention of the issue about July, 1902.

In the early fall of that year Anderson applied to Martin A. Leese, an optician at Washington, District of Columbia. Leese says Anderson said he had had difficulty in having his work done, and he wanted Leese to make spectacles with a short-bow, rimless frame. "He wanted me to reconstruct them and put the bows on the inside of the glass, but the machinery we have in our shop would not allow me to do the work just as he wished it." Leese made several samples. Anderson told Leese that his samples were not fully up to his idea, and Leese then referred Anderson to the Standard Optical Company of Geneva, New York, and the American Optical Company of Southbridge, Massachusetts, who could satisfy him.

When the first count of the issue was read to Leese he was asked how near it described the construction which Anderson desired him to make, and he replied: "That is about what he wanted me to do;" and, looking at Anderson's exhibit, which involved the elements of the issue, he said: "It is the idea

exactly;" and later added that he had no difficulty in under-
standing "exactly what Mr. Anderson wished."

The testimony of Anderson and Moberly convinces us that
what Anderson had in mind when he went to Leese was the pro-
duction of a hinged joint containing a lug, no part of which
would project beyond the outer edge of the attaching strap, and
Leese, examining the glasses with the chunk which Moberly
broke in the attempt to accomplish Anderson's design, said that
to his best recollection "this is about what he (Anderson) had
in there," and added that the glasses "have his idea of short
bows, and bear evidence of someone attempting to do what he
wished me to do."

Anderson testifies that when he realized that Leese lacked the
machinery to do what he wanted, in the early part of January,
1903, he called at the office of the American Optical Company,
and there met Mr. George W. Wells, and one or both of his sons,
one of whom is the appellee here. Anderson testifies that he
exhibited to them a pair of short-bow, rimmed glasses which
were patented December 9, 1902, and explained the invention
involved in this interference; that is, "that in using rimless
glasses I so formed the bows at their juncture with the block
connection that it did away with the most part of the unsightly
chunk in the line of vision and at the same time brought the
bows of my particular construction into the proper position and
alignment to member with the longitudinal recess leading into
the cavity close back of the eye and in the temple."

Anderson adds that Leese referred him to this company and
another as being well equipped for the manufacture of spectacle
rims, and his purpose in being there was to sell the invention,
or to arrange for the manufacture and marketing of it. The
parties failed to make a satisfactory business arrangement, and
Anderson testifies that about April or May, 1903, he began cor-
respondence with the Standard Optical Company about the
manufacture of spectacles embodying the invention in interfer-
ence here, and the invention of the issue, one pair of which,
made by that company some months after that time, Anderson
exhibited.

The appellant, Anderson's, own account of the disclosure he made to George W. Wells does not seem to fully explain the invention. George W. Wells, the president of the American Optical Company, admits Anderson's visit, but denies that during the interview Anderson said anything about any invention of his except his patented short-temple construction of December 9, 1902, and says to his best recollection neither of his sons was present. Joel C. Wells, the appellee, the son of George W. Wells, denies that he was present at the interview, which the appellant details. A letter of January 3d, 1903, from George W. Wells to the appellant, Anderson, relates to Anderson's patent just mentioned, and is silent respecting the invention of the issue. The appellee absolutely denies that he had ever heard of Anderson's invention, or that he had been told of any invention of Anderson similar to the invention in issue prior to March 27th, 1903. It is at this point that the appellant, Anderson's, case fails. He appears to us to be the first to have conceived the invention, but he has failed to prove beyond a reasonable doubt that he made the disclosure to the appellee. Anderson is sure he did so. George W. Wells and Joel C. Wells, the appellee, absolutely deny any such disclosure by Anderson. Joel C. Wells is the patentee, who filed his application March 27th, 1903, and the patent for this invention was granted to him May 26th, 1903. Anderson filed his application for the same invention December 14th, 1903.

The disclosure, to Wells, according to the appellant, Anderson's, recollection, is not so full and clear as the principles of the patent law covering a case like this require.

"The law upon the subject is well settled by repeated decisions of the Supreme Court of the United States. Where a party claims an invention, and also to have communicated the invention to another, who has applied mechanical work thereto, and put such invention into practice, claiming the same as his own, the communication, in order to be effectual, must be shown to have been full and clear as to all the essential elements of the invention, and such as was sufficient in itself to enable the party to whom the disclosure was made to give the invention

practical form and effect without the exercise of invention on his part." *Sendelbach* v. *Gillette,* 22 App. D. C. 174.

In the same case, speaking of the measure of proof necessary to sustain an inventor's claim of disclosure to another claimant, this court said: "The charge that the patentee fraudulently and surreptitiously obtained the patent for the invention which he well knew belonged to another can only be sustained by the clearest and most undoubted proof." Id. 181.

In this instance we do not question the sincerity of the appellant. We are not satisfied that he made clear his invention. The preponderance of the evidence upon this point is in favor of the patentee.

This is a case of an interference between the applicant and the patentee, and the applicant, if he would prevail upon the grounds of disclosure, must prove such disclosure beyond a reasonable doubt; and here the appellant's case fails.

It appears that Anderson applied for and obtained two patents relating to spectacles; the one upon an application filed September 20, 1902, granted December 9, 1902, the other upon an application filed January 27, 1903, granted March 31, 1903. It is true the first patent related to short-bow spectacles generally, and the second to what are known in the art as "nose glasses," and it is also true that the Patent Office discourages including in one application more than one independent invention. It is at least unfortunate for the appellant that he did not file his application for the invention of the issue until December 14, 1903, seventeen months after he appears to have conceived the invention, and then only after the Standard Optical Company had called his attention to Wells's patent. However, the appellant's diligence might have been considered sufficient if he had satisfied this court beyond a reasonable doubt of his alleged disclosure to Wells, the patentee in this issue of interference.

The patentee, Wells, claims to have conceived the present invention in April, 1898. He gives no satisfactory reason for his neglect of his conception during nearly five years, for he admits that he did not take up the invention in the issue until the

latter part of January, 1903. He explains that he then did so principally for two reasons: First, because F. A. Hardy, of Chicago, about that time visited the American Optical Company's works, whereof the appellee was secretary, and Hardy's construction of "short, regular-style end piece suggested the desirability of being able to supply an end piece better than the Mansfield;" second, "our sale of the Mansfield had not turned out to be sufficient to warrant our withholding an improvement if we had one." However that may be, the testimony of Wells, the patentee, corroborated by that of witness L. E. Sibley and George W. Wells, proves that in the latter part of January, 1903, a model of the invention in issue was made, and the invention reduced to practice at that time. On February 19, 1903, the appellee wrote to his attorney instructing him to apply for a patent, and on March 27, 1903, the appellee's application was filed, and on such application a patent was issued on May 26, 1903, for the invention in issue.

We conclude that, because the appellant has failed to prove beyond a reasonable doubt the disclosure he claims to have made about the 1st of January, 1903, upon his visit to the American Optical Company, we must hold that Joel C. Wells, the appellee, is an independent and original inventor.

That Anderson was the first to conceive this invention seems quite probable. That Wells conceived it in 1898 is a proposition not strongly supported by the evidence. That Wells, to whom the patent was granted, must, upon all the proof in the case, be held to have been an original inventor of the matter in this issue, is a proposition not overcome by the proof of the appellant. That Anderson disclosed his invention to Wells is not proved beyond a reasonable doubt. That Anderson scarcely exercised reasonable diligence in reducing his invention to practice is the second defect in his case. It was his misfortune that he practically delayed until the early summer of 1903 to reduce the invention of the issue to practice, and did not file his application for a patent until December 14, 1903, nearly a year and a half after his alleged conception of the patent and after his attention had been called to Wells's patent. It was

in April or May, 1903, that Anderson began to correspond with the Standard Optical Company with the object of entering upon the manufacture of spectacles embodying the invention in issue here. It would appear that Anderson was more concerned with other things, and that no adequate reason has been assigned for the delay and the appellant's lack of diligence in making application for the patent upon the invention at issue.

It appears that Anderson visited the office of this company early in January, 1903, and that later in the same month F. A. Hardy appeared, and the object of Hardy's visit was in some way to shorten the end pieces or lugs upon rimless spectacles, and this object was in a general direction of the invention in issue.

It is sufficient to say that the appellant's case does not prevail over the patent already issued to the appellee. After a careful examination of all the facts and circumstances in this record we are not justified in reversing the priority awarded by the Patent Office to Joel C. Wells as an independent original inventor.

The clerk of this court will certify this opinion and the proceedings in this cause to the Commissioner according to law.

*Affirmed.*